**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 26, 2012**

# In the Court of Appeals of Georgia

A12A1598. THE STATE v. JENNINGS.

MCFADDEN, Judge.

The state appeals from the trial court's order granting a motion to suppress evidence seized after an unlawful arrest. Because the evidence presented at the suppression hearing supports that trial court's finding that the arresting officer did not have probable cause to suspect the defendant of driving under the influence of alcohol to the extent that he was a less safe driver, trial court's decision is not clearly erroneous and we affirm.

When reviewing a trial court's order on a motion to suppress, we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and we review de novo the trial court's application of the law to undisputed facts. *Handley v. State*, 294 Ga. App. 236 (668 SE2d 855) (2008). Moreover, the trial

court's decisions with regard to questions of fact and credibility must be accepted unless they are clearly erroneous, and we will not disturb these decisions if there is any evidence to support them. *State v. Ellison*, 271 Ga. App. 898 (1) (611 SE2d 129) (2005).

So viewed, the evidence shows that on September 27, 2006, the arresting officer and his partner responded to a call of a suspicious vehicle outside a residence. The officers arrived at the scene and found a pickup truck parked in a driveway with the engine and lights on, and with Roy Jennings "kind of asleep" behind the wheel. The officers woke him up, smelled an odor of alcohol coming from the vehicle and asked Jennings to step out of the truck. Jennings' gait was somewhat unsteady, although he was not weaving or falling down. He said that he had drunk "a little bit," although the officer could not recall if he asked him precisely how much he had drunk. Jennings' eyes were glassy and bloodshot, his speech was "[n]ot real slurred but slurred," and an alco-sensor test was positive for alcohol.

The arresting officer did not perform any field sobriety tests because he was not certified in field sobriety. He also testified that such tests would have been unfair because the area where they were located was not level and was covered by gravel. The officer testified that such terrain might explain Jennings' slight unsteadiness

when he got out of the vehicle. The officer also acknowledged that Jennings' glassy and bloodshot eyes could have been caused by a lack of sleep.

Based on the evidence, the trial court found that although the state had shown that Jennings had probably been driving the vehicle while drinking, it had failed to show that he was impaired to the extent that he was a less-safe driver.

> An individual is guilty of DUI-less safe when [he] operates a motor vehicle while under the influence of alcohol to the extent that it is less safe for [him] to drive. It is well established that evidence which shows *only* that a defendant had alcohol in [his] body while driving provides insufficient probable cause to arrest for DUI. Impaired driving ability depends solely upon an individual's response to alcohol. Because individual responses to alcohol vary, the presence of alcohol, in a defendant's body, by itself, does not support an inference that the defendant was an impaired driver. Moreover, we have repeatedly held that the odor of alcohol on a driver's breath or a positive result on an alco-sensor test shows only the presence of alcohol and does not support an inference that the driver is intoxicated and it is less safe for [him] to drive. The probable cause needed to conduct an arrest for DUI requires that the officer have knowledge or reasonably trustworthy information that a suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which rendered [him] incapable of driving safely.

(Emphasis in original; citations and punctuation omitted.) *State v. Damato*, 302 Ga. App. 181, 182 (1) (690 SE2d 478) (2010).

In this case, while there was evidence showing the presence of alcohol in Jennings' body, the testimony from the arresting officer was, at best, conflicting as

3

to whether he was under the influence of alcohol to a degree which impaired his ability to drive safely. While the officer testified about certain physical manifestations that might indicate impairment, he also testified that other factors, such as the uneven, gravel-covered terrain and fatigue, could have caused those physical manifestations. The state claims that the arresting officer "opined that [Jennings] was a DUI-Less Safe driver based on his training and experience." However, a review of the hearing transcript page cited by the state reveals that the officer did not opine that Jennings was a less safe driver, and instead he simply testified that he believed Jennings was under the influence of alcohol when he encountered him. Regardless, even if the officer had opined that he believed Jennings was a less safe driver, the trial court would not have been bound by such opinion and could have rejected it. Id. at 183 (1). In short, the trial court, sitting as the trier of fact and witness credibility, was authorized to find from the evidence that the state had shown the presence of alcohol, but had failed to show that Jennings was under the influence of alcohol to a degree which rendered him incapable of driving safely. "Mere presence of alcohol is not the issue. In a less safe case, the state must prove that the defendant had impaired driving ability as a result of drinking alcohol." (Citation omitted.) *Ojemuyiwa v. State*, 285 Ga. App. 617, 620 (2) (647 SE2d 598) (2007).

4

The state further argues that the trial court improperly refused to review the patrol car video recording of the encounter with Jennings. However, the transcript does not show that the trial court *refused* to review it. Rather, when the recording was tendered by the state, the court admitted it into evidence and asked if it contained anything different from the officer's testimony. The prosecutor then stated that it showed Jennings was belligerent at some point, and that "if you look at that tape, it might speak volumes." The trial court noted that belligerence was insufficient to show that Jennings was impaired, citing *Ojemuyiwa*, supra, which held that there was insufficient evidence that a defendant who smelled of alcohol and became increasingly belligerent was a less safe driver. The state did not object to the fact that the video had not been played, that the court had not yet watched it, or obtain any ruling from the court by which it refused to review it prior to entering a final written order on the motion. Under these circumstances, even if we assume that the trial court never watched the video prior to entering its written order on a date after the suppression hearing, "[t]he failure to object waives this issue on appeal." (Citation omitted.) *Cummings v. State*, 272 Ga. App. 886, 888 (1) (614 SE2d 121) (2005) (failure to object to trial court's indication at hearing that it would not review a videotape waives issue for appeal).

5

"We are a court for the correction of errors of law, and we cannot draw a different inference from the evidence or make a credibility determination contrary to the one made by the trial court, even if we disagree, as long as there is evidence in the record to support the trial court's findings." (Citation omitted.) *Damato*, supra at 183 (1). Because the trial court did not clearly err in finding the state failed to offer sufficient evidence showing probable cause to arrest Jennings for DUI-less safe, we must affirm the decision to grant the motion to suppress. See *State v. Gray*, 267 Ga. App. 753, 756 (2) (600 SE2d 626) (2004).

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*