## A11A1253. JAMES v. THE STATE.
(717 SE2d 713)

MILLER, Presiding Judge.

Following a bench trial, Ronald Malcus James was convicted of 26 counts of sexual exploitation of children (OCGA § 16-12-100). On appeal, James contends that the trial court erred in denying his motion to suppress evidence seized as a result of a search warrant authorizing entry into his home and the seizure of his computer

---

therein. We find that under the totality of circumstances the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant, and we affirm.

A special agent with the Georgia Bureau of Investigation (GBI) applied for a warrant to search James's residence for evidence of the crime of sexual exploitation of children. The agent's affidavit in support of the warrant application showed that on January 8, 2007, the National Center for Missing and Exploited Children (the "NCMEC") contacted the GBI with information that an Athens, Clarke County suspect had posted images of child pornography on a specified internet website. According to the NCMEC, its information was provided by a named internet security specialist employed by the host of the website, Google, Inc. (the "Google Employee"). In her referral to the NCMEC, the Google Employee "identifies the subject operating the website . . . to have an address in Athens, Clarke County, Georgia."

According to the agent's affidavit, the NCMEC's referral to the GBI identified the internet protocol (IP) address associated with the subject website, and using the WHOIS internet database, it was determined that Charter Communications was the internet service provider for this IP address. The agent subsequently obtained a court order to require Charter Communications to provide the subscriber information pertaining to the IP address. Charter Communications identified James, at a physical address in Athens, Clarke County, as the registered user of the IP address at the time the alleged illegal activity occurred.

The agent further averred that he contacted a GBI analyst with the information provided by Charter Communications, and the analyst provided James's address, date of birth, social security number, driver's license number, and employment information. The agent also

> reviewed the information that was provided to the [GBI] by [the NCMEC] Cybertip line and was informed that [the IP address] uploaded and posted six images depicting child pictures onto a Google webpage. On Thursday, December 28, 2006[,] at approximately 5:58:19 a.m. PST, seven files were received from [a specified website] from [the identified IP address]. These files contained images that depicted children engaging in or posing in sexually explicit scenes.

The agent conducted an additional investigation into James's employment and educational background, and he also conducted drive-by surveillance of James's residence.

Following receipt of the affidavit, a superior court judge signed a

search warrant for James's residence, and the warrant was executed on February 12, 2007. Following James's indictment on 26 counts of sexual exploitation of children, James moved to suppress evidence seized as a result of the execution of the search warrant.

At the hearing on the motion to suppress, the agent testified that the NCMEC forwarded the information to the GBI on a compact disc. The agent reviewed the information, including images showing what appeared to be children engaging in sexual activity.

On cross-examination of the agent, James introduced the first page of the document transmitted to the GBI by the NCMEC. That document showed the contact information for the Google Employee. The agent testified that he did not directly contact the Google Employee, either by telephone, e-mail, or in person. The documentation transmitted to the GBI by the NCMEC also included a statement that the "NCMEC neither investigates nor vouches for the accuracy of the information reported to [NCMEC]."[1] The agent admitted that he did not know whether the NCMEC or the Google Employee performed the WHOIS database search, and further testimony indicated that the database search was part of the report provided by the Google Employee to the NCMEC.

Following the hearing, the trial court denied James's motion to suppress. James claims that the trial court erred because the affidavit on which the warrant was issued was insufficient to provide the issuing magistrate with relevant and material facts needed to form an independent judgment regarding the existence of probable cause, and because the hearsay information contained within the affidavit was insufficient to authorize the issuance of the warrant. We disagree.

"A search warrant will only issue upon facts sufficient to show probable cause that a crime is being committed or has been committed." *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009) (citing OCGA § 17-5-21 (a)). In determining probable cause, the magistrate's task is

> to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probabil-

---

[1] The full statement provides:
The [NCMEC] is a national clearinghouse that gathers information about missing and sexually exploited children for law enforcement use. NCMEC neither investigates nor vouches for the accuracy of the information reported to itself. NCMEC forwards all information unedited to law enforcement agencies for investigation and disposition pursuant to its congressional mandate to operate as a clearinghouse.

ity that contraband or evidence of a crime will be found in a particular place.

(Citations omitted.) Id. The trial court should afford substantial deference to the issuance of the search warrant upon a judicial finding of probable cause, with resolution of doubtful or marginal cases "largely determined by the preference to be accorded to warrants." (Citation and punctuation omitted.) Id. at 77-78. As the appellate court, our duty is to determine whether the magistrate "had a substantial basis for concluding that probable cause existed to issue the search warrant." (Citation and punctuation omitted.) Id. at 78. "[A]ppellate courts will review the search warrant to determine the existence of probable cause using the totality of the circumstances analysis set forth in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983)." (Citation and punctuation omitted.) Id.

(a) James contends that the affidavit was insufficient because the agent did not contact anyone at Google to confirm the identity of the Google Employee, corroborate that a person from Google had made the report to the Center, or verify the contents of that report. Nevertheless, "[h]earsay can be the basis for issuance of a warrant so long as there is a substantial basis for crediting the hearsay. In determining the credibility of hearsay, the declarant's veracity and basis of knowledge are still major considerations." (Citations and punctuation omitted.) *Banks v. State of Ga.*, 277 Ga. 543, 545 (2) (592 SE2d 668) (2004). Here, the NCMEC forwarded the information it received from the Google Employee to the GBI, and there is no reason to doubt that it did so accurately. The NCMEC is a "national resource center and clearinghouse" and operates a national network which allows it to "transmit images and information regarding missing and exploited children to law enforcement across the United States and around the world instantly." 42 USC § 5771 (9) (A), (C). Electronic communication service providers and remote computing service providers, who have knowledge of certain crimes involving child pornography, are required to report the facts or circumstances of the apparent crime to the NCMEC's Cyber Tip Line. See former 42 USC § 13032 (b) (1).[2]

The affidavit also sets forth facts which show both the reliability and basis of knowledge of the Google Employee. See *State v. Hall*, 276 Ga. App. 769, 774 (624 SE2d 298) (2005) (probable cause shown

---

[2] This provision, applicable at the time of the referral to the NCMEC at issue here, was repealed in 2008, and the reporting requirements are now codified at 18 USC § 2258A. See *United States v. Baker*, 538 F3d 324, 330 (III), n. 8 (5th Cir. 2008) (setting forth requirements of former 42 USC § 13032 (b) (1) regarding reports to the Cyber Tip Line).

by totality of circumstances surrounding informant's basis of knowledge and reliability). The affidavit contains the name of the Google Employee and explains the source of her knowledge — that Google hosts the website on which the child pornography appeared. Further, in making the disclosure to the NCMEC, the Google Employee was a witness to a possible crime and acting in the role of a concerned citizen, who is afforded "a preferred status insofar as testing the credibility of [her] information." (Citations omitted.) *Whitten v. State*, 174 Ga. App. 867, 868 (331 SE2d 912) (1985). See *State v. Woldridge*, 958 S2d 455, 460 (Fla. App. 2007) (internet service provider was in same position as a citizen informant in forwarding suspected pornographic images along with suspect's screen name to the NCMEC); *State v. Sisson*, 883 A2d 868, 880 (V) (B) (Del. Super. Ct. 2005) (in passing along child pornography information to the NCMEC, internet service provider "was essentially a citizen witness to a crime").

James nevertheless theorizes that anyone could submit images to the NCMEC's Cyber Tip Line under an alias, and that, in such a case, the NCMEC would then forward the tip to law enforcement whether or not the tip was fraudulent or incorrect. Notwithstanding that the agent failed to independently confirm the identity of the Google Employee, it could be reasonably inferred from the totality of circumstances that the person reporting the information to the NCMEC was an employee of Google, and not a hypothetical imposter in possession of child pornography. The disclosure to the NCMEC was consistent with that of an electronic service provider honoring its mandatory reporting obligation. The individual reporter did not attempt to remain anonymous, but provided her name and employer.[3] Consistent with the representation that she was employed by Google, she gave technical and precise information related to "google.com" websites. She also provided the evidence of the crime — data images showing child pornography. Further, according to the agent, the Google Employee "identifies the subject operating the website . . . to have an address in Athens, Clarke County, Georgia." The agent contacted a third party, Charter Communications, from whom he obtained information connecting the suspect IP address to a residence in Athens, Clarke County, Georgia. Under the totality of circumstances, the "pieces fit neatly together." *Massachusetts v. Upton*, 466 U. S. 727, 733 (104 SC 2085, 80 LE2d 721) (1984).

Even if the agent could have done a more thorough job in

---

[3] The affidavit evidence presented at the hearing on James's motion to suppress shows that the Google Employee not only provided her name and employment information but also her physical business address, Goggle.com e-mail address, and IP address.

investigating the information received by the GBI, his inference that the reporting individual was actually a Google employee was a reasonable one and "stronger than a mere uninformed and unconfirmed guess." *Upton*, supra, 466 U. S. at 734 (assessing affiant's identification of informant). Compare *Eaton v. State*, 210 Ga. App. 273, 274 (435 SE2d 756) (1993) (affiant did not present any facts upon which the magistrate could have determined the veracity of any of the informants), with *Dearing v. State*, 233 Ga. App. 630, 632 (505 SE2d 485) (1998) (totality of the circumstances included evidence that the informant could be considered a concerned citizen). We conclude that the affidavit provided a sufficient basis for the issuing judge to make a practical, common sense decision that there was a fair probability that evidence of the crime of sexual exploitation of children would be found at James's residence.

(b) James further contends that the affidavit contains misleading information and omits other material information. Specifically, he points out that the agent avers that the NCMEC "confirms" the existence of child pornography on the website, which James argues is a misrepresentation. He also argues that the agent misrepresents that the NCMEC, rather than the Google Employee, performed the WHOIS database search. James points out that the affidavit failed to include the NCMEC's disclaimer that it does not investigate or vouch for the accuracy of the information it receives. Finally, James asserts that, although there was a difference between the e-mail address identified by Charter Communications and the e-mail address included in the Google Employee's report to the NCMEC, such difference was not disclosed in the affidavit.

> If a court determines that an affidavit submitted contains material misrepresentations or omissions, the false statements must be deleted, the omitted truthful material must be included, and the affidavit must be reexamined to determine whether probable cause exists to issue a warrant.

(Citation and punctuation omitted.) *Sullivan v. State*, 284 Ga. 358, 361 (2) (667 SE2d 32) (2008). Even if we assume that the affidavit contains the misrepresentations and omissions identified by James, and the affidavit is re-examined with the alleged false statements omitted and the truthful material included, the information conveyed to the judge issuing the warrant is substantially the same. The agent reviewed the information transmitted to the GBI by the NCMEC and averred that it contained images of children engaging in sexually explicit poses or scenes, and thereby independently confirmed the likelihood that a crime had been committed. Additionally, the IP address associated with the subject website was discov-

ered through an independent internet database (WHOIS). Further, the affidavit shows that the NCMEC received its information in a referral from the Google Employee and consistently couched the information in the context of that referral. The inclusion of the NCMEC disclaimer in the text of the affidavit would not have significantly clarified the role of the NCMEC in passing the information received from the Google Employee on to the GBI. Finally, the agent's testimony at the suppression hearing indicates that the differences in the e-mail addresses were not significant because a person can have a variety of e-mail addresses, and that "the imperative thing [was having] the IP address." Accordingly, James's arguments as to the alleged misrepresentations and omissions do not alter our conclusion that the affidavit presented the magistrate with a substantial basis for finding probable cause to issue the warrant. See *Carter v. State*, 283 Ga. 76, 78 (2) (656 SE2d 524) (2008) (probable cause to issue warrant remained even if additional facts had been included along with the other facts considered by the magistrate).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED OCTOBER 18, 2011 — ▇▇▇▇▇▇▇▇▇▇

*James D. Crowe*, for appellant.
*Kenneth W. Mauldin, District Attorney, Jon R. Forwood, Assistant District Attorney*, for appellee.